**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

JOHN C. P.,[1]
    Plaintiff,

        v.                                  Civil No. 3:21-cv-00296 (DJN)

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,
    Defendant.

**REPORT AND RECOMMENDATION**

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits under the Social Security Act ("Act"). At the time of his application date, Plaintiff was a thirty-six-year-old with a high school-level education who previously worked as a plant operator and mechanic. (R. at 72, 135, 152.) Plaintiff alleges he is unable to work due to depression, anxiety disorder, and agoraphobia. (R. at 151.)

On December 24, 2020, an Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (R. at 7.) This matter comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross motions for summary judgment, rendering the matter ripe for review.[2]

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further

1

Plaintiff now seeks review of the ALJ's decision, arguing that the ALJ's residual functional capacity is not supported by substantial evidence because the ALJ erroneously assessed the medical opinion evidence of James R. Spadoni, M.D. ("Dr. Spadoni"). (Pl.'s Mem. Supp. Mot. Summ. J. 1, ECF No. 21 ("Pl.'s Mem.").) For the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 20) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 23) ("Def.'s Mem.") be GRANTED and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on January 9, 2020, alleging disability beginning November 15, 2019. (R. at 135.) The Social Security Administration ("SSA") denied Plaintiff's claim on April 29, 2020 (R. at 97) and again upon reconsideration on June 18, 2020. (R. at 103.) Plaintiff requested a hearing before an ALJ, and a hearing was held on December 2, 2020. (R. at 53-71, 111-12.) On December 24, 2020, the ALJ issued a written opinion, holding that Plaintiff was not disabled under the Act. (R. at 10-19.) Plaintiff requested review of the ALJ's decision. On March 4, 2021, the SSA Appeals Council denied the request, rendering the ALJ's decision as the final decision of the Commissioner. (R. at 1-3, 130.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir.

---

restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

In considering the decision of the Commissioner based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's

five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must determine the claimant's residual functional capacity, accounting for the most the claimant can do despite his physical and mental limitations. § 404.1545(a).

At step four, the ALJ assesses whether the claimant can perform his past work given his residual functional capacity. § 404.1520(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, such that he must prove that his limitations preclude him from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 2012 U.S. App. LEXIS 128, at *3 (citation omitted). If such work can be performed, then benefits will not be awarded, and the analysis ends at step four. § 404.1520(e). However, if the claimant cannot perform his past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant is capable of performing other work that is available in the national economy. § 404.1520(a)(4)(v).

### III. THE ALJ'S DECISION

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 10-19.) *See* 20 C.F.R. § 404.1520(a)(4); *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, November 15, 2019. (R. at 13.) At step two, the ALJ determined that Plaintiff's anxiety constituted a severe impairment pursuant to 20 C.F.R. §

4

404.1520(c). (R. at 13.) At step three, the ALJ determined that Plaintiff did not have an impairment, individually or in combination, which met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 13.)

The ALJ then determined Plaintiff's residual functional capacity. (R. at 14.) Based on the evidence in the record, the ALJ determined that Plaintiff retained the ability to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> [He] can understand, remember and carry out simple instructions and make simple work related decisions. He can work at a consistent pace throughout the workday, but not at a production rate pace where tasks must be performed quickly. He can tolerate occasional interaction with coworkers, and supervisors with no public contact or tandem work tasks. He can tolerate occasional changes in routine work settings and procedures or processes. He should have very little independent decision making with no responsibility for the safety of others. Required job tasks should not require driving or travel to new or unfamiliar places.

(R. at 14.)

The ALJ explained that he determined Plaintiff's residual functional capacity after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. (R. at 14.) Based on his residual functional capacity findings, the ALJ concluded at step four that Plaintiff was not capable of performing past relevant work as a construction equipment mechanic because "he is limited to simple routine tasks and his past work was skilled." (R. at 18.)

At step five, the ALJ found that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 18.) The ALJ considered the testimony of a vocational expert, who opined that Plaintiff could perform the requirements of representative

occupations such as dishwasher, router, or mail clerk. (R. at 18.) Therefore, the ALJ determined that Plaintiff was not disabled under the Act. (R. at 19.)

## IV. ANALYSIS

Plaintiff seeks remand on the issue of whether the ALJ properly evaluated the medical opinion of Plaintiff's treating psychiatrist, Dr. Spadoni, which the ALJ found "partially persuasive." (Pl.'s Mem. at 6) (R. at 17.) In support, Plaintiff alleges that "[t]he ALJ failed to adequately discuss both supportability and consistency when evaluating Dr. Spadoni's opinion. As a result, it is unclear what he based his [residual functional capacity] determination on." (Pl.'s Mem. at 11.) Defendant responds that the ALJ sufficiently addressed the supportability and consistency of Dr. Spadoni's medical opinion, and substantial evidence supports the ALJ's residual functional capacity assessment. (Def.'s Mem. at 19-26.) For the reasons that follow, this Court finds that the ALJ assessed Dr. Spadoni's medical opinion in accordance with the regulations, and substantial evidence supports the ALJ's residual functional capacity findings.

### A. Substantial Evidence Supports the ALJ's Evaluation of Dr. Spadoni's Opinion.

*1. Evaluating Medical Opinion Evidence for Claims Filed on or After March 27, 2017.*

As an initial matter, for claims filed on or after March 27, 2017, revised regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. The revised regulations provide that the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s) . . . ." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 404.1520c(a), (b).

Under the regulations,[3] the ALJ must evaluate each medical opinion and articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the medical opinion[,]" including familiarity with the other evidence or understanding of disability program policies and requirements. *Id*. § 404.1520c. Supportability and consistency are the "most important" factors, and the ALJ must discuss how these factors were considered in the written opinion. *Id.* §§ 404.1520c(b)(2). Supportability and consistency are explained in the regulations as follows:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 404.1520c(b)(3).

---

[3] Because Plaintiff filed his disability claim after March 27, 2017, Section 404.1520c, which sets forth revised rules regarding the assessment of medical opinion evidence, applies here.

7

### 2. *Plaintiff's Treatment with Dr. Spadoni.*

Dr. Spadoni, a board-certified psychiatrist, began treating Plaintiff on May 2, 2019 for increased anxiety and panic attacks. (R. at 289.) Plaintiff presented to his appointment with adequate grooming and hygiene, appropriate dress, and appeared to be engaged and cooperative. (R. at 290.) Plaintiff's thought content was described as adequate and reality-based, and his thought form was linear, logical, and coherent. (R. at 290.) His mood was stable, his affect was within an adequate range, and he possessed adequate insight and fair judgment. (R. at 290.) Plaintiff's memory, calculations, fund of information, and abstraction were "grossly intact," and he was fully oriented to person, place, time, and situation. (R. at 290.) He told Dr. Spadoni that he has been married for six years, had no children, and endorsed a "good and supportive relationship with [his] mother." (R. at 290.) Nonetheless, he recounted a recent uptick in anxiety and panic attacks since August 2018 and explained that he experienced anxiety while "driving for the past 7 years." (R. at 289.) As a result, Plaintiff's wife drove him to work, and he worried that he would lose his job due to his anxiety. (R. at 289.) Dr. Spadoni diagnosed Plaintiff with panic disorder with agoraphobia and prescribed medication. (R. at 291.)

In June 2019, Plaintiff followed up with Dr. Spadoni and reported:

> [B]eing very satisfied with how he is doing. He has only needed a few lorazepam, but keeps then [sic] available at work and at home, and relates that he is feeling some early contact 'with the person I am' rather than the frightened and anxious individual he presented as last month. He is very comfortable staying with his current dose of venlafaxine and [blood pressure] is great at 127/78.

(R. at 293.) Plaintiff's mental status examination remained unchanged since his last appointment, except that he had an "upbeat, appropriate and cooperative" attitude. (R. at 293.) His medications remained unchanged.

Plaintiff's next appointment with Dr. Spadoni was on August 15, 2019, where he reported that he had "not noticed any benefit with venlafaxine at 150 mg for three weeks 'unless I take an Ativan with it in the morning.'" (R. at 295.) He told the doctor that he wanted to "try sertraline" instead, although he recounted that a former experience with that medication made "panics worse." (R. at 295.) Nonetheless, he was amenable to trying it again, and Dr. Spadoni altered his medication regimen to taper off venlafaxine over three weeks while "crossing on to sertraline 150 mg . . . ." (R. at 296.) On examination, Dr. Spadoni noted no significant changes to Plaintiff's mental status from the previous two appointments. (R. at 296.) He suggested that Plaintiff return for a follow-up appointment in ten to twelve weeks. (R. at 297.)

On November 14, 2019, Plaintiff presented to Dr. Spadoni and reported a "very difficult transition with venlafaxine taper onto sertraline, but at 200 mg the past couple weeks he has been feeling quite good and went from daily lorazepam to almost none except for appointments and stressful situations." (R. at 298.) Plaintiff told Dr. Spadoni that he was struggling with sleep and frequently awoke earlier than desired. (R. at 299.) Dr. Spadoni suggested "a trial on topiramate and he is willing to give that a try leaving sertraline at 200 mg." (R. at 299.) Plaintiff's mental status examination remained unremarkable. (R. at 299.) He was told to follow up again in three months. (R. at 299.)

At an appointment on February 6, 2020, Dr. Spadoni noted that Plaintiff "report[ed] no real benefit from sertraline at 200 mg dose. Still struggling with anxiety frequently, needing lorazepam couple times per week." (R. at 300.) Dr. Spadoni recommended transitioning from sertraline to escitalopram, which Plaintiff was "willing to try." (R. at 300.) His mental status examination remained unchanged, and he was told to return in three months. (R. at 300.) Plaintiff subsequently followed-up via telehealth on June 4, 2020 and reported difficulties with getting his medications

9

filled at the pharmacy. (R. at 306.) Nonetheless, Plaintiff remained "motivated to try the escitalopram" and had a conversation with Dr. Spadoni about engaging in "trials of duloxetine and bupropion as possible future considerations." (R. at 306.) He reported using an over-the-counter medication to help him sleep at night. (R. at 306.) Dr. Spadoni was limited to observations of Plaintiff's mental status due to the telephonic nature of the appointment but described Plaintiff as "alert and interactive with good cognitive flow" despite verbalizing frustration. (R. at 306.) He was told to continue his medication management and to follow up again in three months. (R. at 307.)

      *3. Dr. Spadoni's Opinion.*

In addition to Dr. Spadoni's progress notes from approximately May 2019 to June 2020, the record includes the doctor's completed medical source statement from July 23, 2020, in which he provided his medical opinion about Plaintiff's ability to do work-related activities. (R. at 289-309.) Dr. Spadoni opined that Plaintiff suffered from anxiety attacks and difficulty with concentration and focus. (R. at 308.) He was then asked to assess Plaintiff's mental abilities and aptitude needed to do certain levels of work. (R. at 308.) The "level[s] of impairment" were categorized as none, mild, moderate, marked, and extreme. (R. at 308.)

Dr. Spadoni's answers indicated that Plaintiff had no limitations in understanding and memory[4], and no limitations "upon sustained concentration"[5] except when having a panic attack. (R. at 308.) With regards to the latter, Dr. Spadoni opined that Plaintiff would be markedly limited

---

[4] Dr. Spadoni answered "none" when asked to rate Plaintiff's limitations "upon understanding and memory," which included Plaintiff's ability to understand simple and detailed instructions and remember locations and work procedures. (*See* R. at 308.)

[5] Dr. Spadoni answered "none" when asked to rate Plaintiff's limitations in this area of functioning. Specifically, whether Plaintiff was impaired in his abilities to carry out simple and detailed instructions, sustain routine without special supervision, maintain concentration for extended periods, and work with others without being distracted by them.

in this area of functioning, and added that Plaintiff was "extremely variable with normal functions most of time, but panic attacks and avoidance of panic triggers (such as driving or exposure to unfamiliar locations) could result in periods of anxiety induced dysfunction that could last from minutes to hours – if exposures sustained." (R. at 308-09.) When asked to assess Plaintiff's limitations in social interaction, Dr. Spadoni indicated that Plaintiff was moderately and markedly impaired, mildly impaired in his ability to ask questions or request assistance, but had no limitations on his ability to get along with coworkers or maintain neatness and cleanliness. (R. at 308.) Finally, Dr. Spadoni was asked to assess Plaintiff's ability to adapt. (R. at 308.) In this area, Dr. Spadoni found that Plaintiff was extremely limited in his ability to travel to new places or travel alone, markedly limited to responding to changes in the work setting, moderately limited in his ability to respond to normal levels of stress, and not limited in his abilities to respond to criticism or direction from supervisors, or to respond to hazards and take precautions. (R. at 308.) He estimated that Plaintiff would be absent from work four or more days per month as a result of his symptoms. (R. at 308.)

    4. *Analysis of the ALJ's Findings.*

In his decision, the ALJ summarized Dr. Spadoni's opinion and found it "partially persuasive." (R. at 17.) The ALJ reasoned that:

> Dr. Spadoni supported his opinion with his narrative and office notes, and it is somewhat consistent with the remainder of the medical evidence. [Plaintiff] has anxiety that sometimes results in panic attacks. He has triggers of driving or being in unfamiliar locations, and for this reason, he should avoid these activities. Being around the public also exacerbates his condition, and he should avoid this as Dr. Spadoni found. However, due to the variability of his panic attacks, it is an underestimate [sic] of [Plaintiff's] abilities to find he would be absent from work up to four times per month. His medication is somewhat effective in controlling his symptoms, and if he avoids his panic attack triggers, it is likely he would not

11

> miss work at such a rate. Therefore, the undersigned finds this opinion is only partially persuasive.

(R. at 17.)

In challenging the ALJ's treatment of Dr. Spadoni's medical opinions, Plaintiff appears to argue that the ALJ erred in his findings because Dr. Spadoni is Plaintiff's treating doctor, and that "there is ample evidence in the medical record consistent with Dr. Spadoni's opinion." (Pl.'s Mem. at 10.) However, this argument misunderstands the standard by which this Court is to review the ALJ's decision. It is Plaintiff's duty to both produce evidence and prove that he is disabled under the Act. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The undersigned is charged with reviewing the Commissioner's decision to deny Plaintiff's application to determine whether: (1) the ALJ has applied the correct legal standards; and (2) the ALJ's findings are supported by substantial evidence. *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (citing *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). The substantial evidence standard "presupposes a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). "In reviewing for substantial evidence, [a court must not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). Consequently, as long as the judgment is explained and supported by substantial evidence, this Court must accept the Commissioner's decision, even if this Court would reach an opposite conclusion or weigh the evidence differently if it were conducting a de novo review of the record. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Rhyne v. Astrue*, 2010 U.S. Dist. LEXIS 142595, *9 (W.D.N.C. 2011).

Therefore, the issue before this Court is whether the ALJ's finding that Plaintiff is not disabled is properly explained and supported by substantial evidence and that such decision was reached based upon a correct application of the relevant law. As stated above, the regulations require that the ALJ explain how he considered the consistency and supportability of the medical opinion and why—based on the evidence—the ALJ reached the particular conclusion he did as to the persuasiveness of the opinion. See 20 C.F.R. § 404.1520c(a)–(b). The ALJ satisfied that standard here.

It is clear from the plain language in the ALJ's decision that he explicitly articulated the supportability and consistency of Dr. Spadoni's opinion in accordance with the regulations and built a logical bridge from the evidence to his conclusion. The ALJ explained that Dr. Spadoni "supported his opinion with his narrative and office notes, and it is somewhat consistent with the remainder of the medical evidence." (R. at 17.) The ALJ agreed with Dr. Spadoni's opinion regarding Plaintiff's "triggers of driving or being in unfamiliar locations" and crafted the residual functional capacity which limited Plaintiff to jobs which do not require these activities. (R. at 14, 17.) The ALJ discredited Dr. Spadoni's opinion about Plaintiff's estimated absenteeism by explaining that the "variability of [Plaintiff's] panic attacks" in addition to his "somewhat effective" medication regimen led the ALJ to doubt whether Plaintiff would miss work at such a rate. (R. at 17.) Indeed, Dr. Spadoni's own treatment notes suggest that Plaintiff was able to treat his symptoms with medication, which was appropriately moderated and adjusted according to its effectiveness, and that Plaintiff continued to have unremarkable mental status examinations. (*See generally* R. at 289-307.) This followed a series of appointments with his primary care physician in which he was provided with medication management before his referral to Dr. Spadoni. (*See generally* R. at 228 (primary care appointment in which Plaintiff reported having a stable mood

and doing well with Lexapro and no side effects); R. at 226 (prescribing a different anxiety medication and referring to psychiatric care).)

Having reviewed the record, the undersigned finds that substantial evidence supports the ALJ's determination that Dr. Spadoni overestimated Plaintiff's ability to attend work without absences due to his anxiety. Dr. Spadoni's opinion on this matter is belied by Plaintiff's daily activities, which included handling his finances, working on his motorcycle, playing video games, engaging with social media, shopping online, preparing meals, and socializing with family over dinner each Sunday. (R. at 185-86.) A review of the ALJ's decision indicates that the ALJ built a logical bridge from the evidence to his conclusion, as the records demonstrate instances in which Plaintiff reported improvement in his symptoms and that his medication regimen was adjusted appropriately. Upon review of the record and the ALJ's decision, the Court finds that the ALJ sufficiently articulated his reasoning for finding Dr. Spadoni's medical opinion partially persuasive, and substantial evidence supports the ALJ's residual functional capacity assessment.

## V. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 20) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 23) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to United States District Judge David J. Novak and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/ MRC
Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: May 20, 2022